IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA, HUNTINGTON

**Jane Doe,**

    **Plaintiff,**

v.                                                Civil Action No.: 3:22-cv-00461

**Chili's of West Virginia, Inc., d/b/a
Chili's Grill & Bar, Brinker International Inc.,
Carl Wiles, and Edwin Rodriguez,**

    **Defendants.**

## COMPLAINT

Jane Doe, the Plaintiff, is a qualified individual with a disability who was discriminated against in the workplace based on her medical status as HIV positive. Plaintiff brings this action against her joint-employers, Chili's of West Virginia, Inc., d/b/a Chili's Grill & Bar, Barboursville, WV location, and Brinker International Inc, Carl Wiles, and Edwin Rodriguez ("Defendants") for the wrongful termination of her employment in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1 *et seq*. Plaintiff brings this action to remedy Defendants' unlawful acts and to receive compensation, including back pay, front pay, emotional distress damages, punitive damages, reasonable attorney fees and costs, and equitable and injunctive relief for the harms she has suffered.

### Parties

1.     Plaintiff is a young mother in recovery for a substance use disorder, a qualified individual with a disability, and a resident of West Virginia. Plaintiff was jointly employed by

Defendants. She worked for Defendant Chili's of West Virginia, Inc., d/b/a Chili's Grill & Bar, at the Barboursville, WV location. However, as described more fully below, Plaintiff was paid by Defendant Brinker International.

2. Defendant Chili's of West Virginia, Inc., d/b/a Chili's Grill & Bar, Barboursville, WV location, is an in-state corporation with an operating restaurant located at 925 Mall Road, Barboursville, WV 25504.

3. Upon information and belief, Defendant Carl Wiles is jointly employed by Defendants Chili's of West Virginia, Inc., d/b/a Chili's Grill & Bar, at the Barboursville, WV location, and Brinker International.

4. Upon information and belief, Defendant Edwin Rodriguez is jointly employed by Defendants Chili's of West Virginia, Inc., d/b/a Chili's Grill & Bar, at the Barboursville, WV location, and Brinker International.

5. Defendant Brinker International Inc. is an out-of-state corporation with a principal place of business located at 3000 Olympus Boulevard, Dallas, Texas, 75019. Brinker International owns, operates, and controls Chili's of West Virginia, Inc., d/b/a Chili's Grill & Bar, Barboursville, WV location. All of the corporate officers for Chili's of West Virginia, Inc., including Director, President, and Secretary, Christopher L. Greene, and Treasurer and Vice-President, Daniel S. Fuller, are located at the principal office located at 3000 Olympus Boulevard, Dallas, Texas, 75019.

### Statement of Facts

6. Plaintiff is a young mother who is in long-term recovery from an opioid based substance use disorder. She has successfully been in recovery for the last three years.

7. In 2018, Plaintiff sought medical treatment for her substance use disorder and began a regimen of Vivitrol, a monthly injection of medication to treat her disorder.

8. While in recovery, Plaintiff met her partner and became pregnant with twins.

9. During her pregnancy, Plaintiff stopped receiving Vivitrol and successfully remained in recovery.

10. Plaintiff gave birth to healthy twins on December 19, 2019.

11. In June 2020, Plaintiff began working at Chili's Grill & Bar in Barboursville, WV, as a Prep Cook Two. Plaintiff was hired by Lisa Crouch, an agent of Defendants.

12. Plaintiff made $11.00 per hour and she was a full-time employee, working between thirty-five to over forty hours per week.

13. Plaintiff's job required that she portion and prepare a variety of foods, including cutting meats and vegetables, and maintaining proper sanitization throughout the kitchen.

14. Within the first six months of employment, Plaintiff was promoted to Prep Cook One. Her new rate of pay was $12.50 per hour. In this position, Plaintiff cooked menu items and made daily products, as well as maintaining her other preparation duties.

15. During her employment, Plaintiff was never counseled or reprimanded for her job performance.

16. Additionally, Plaintiff was awarded multiple AVT cards, an employee recognition award for outstanding performance. Additionally, she was awarded a "Great Job!" pin for her service.

17. Plaintiff's paystubs listed Brinker International as the payor of her wages. Although she worked for Defendant Chili's of West Virginia, Inc., d/b/a Chili's Grill & Bar, at the

Barboursville, WV location, Plaintiff was an employee of Brinker International because she was paid by it.

18. In April of 2021, Plaintiff decided to resume medical treatment of her substance use disorder.

19. On Good Friday, Friday, April 2, 2021, Plaintiff had a routine screening to resume Vivitrol. During that screening appointment, Plaintiff was diagnosed with HIV, the human immunodeficiency virus.

20. Unbeknownst to Plaintiff, her partner had been unfaithful and contracted HIV and transmitted it to her.

21. Upon learning of her diagnosis, Plaintiff became distraught. She mistakenly thought that she would die within seven years.

22. Plaintiff learned that she needed to begin a strict medication therapy so that she could lower the amount of the virus in her blood, such that it would become undetectable. She learned that she could live a fairly normal life after she adjusted to her medication.

23. Plaintiff's doctor advised her that patients who begin this medication often suffer fatigue, nausea, abdominal pain, and tiredness for the first two months.

24. Plaintiff's doctor recommended she take some time off work to allow her body to adjust to the new medication.

25. Plaintiff did not want to tell anyone about her diagnosis. In fact, she had been advised by her doctor that she did not have to tell anyone about her diagnosis unless she became sexually active with a new partner.

26. Plaintiff was scheduled to work the following day, Saturday, April 3, 2021.

27. Plaintiff went in early that morning and asked her manager, Carl Wiles, if she could speak to him about something personal. Plaintiff and Mr. Wiles met privately in the office with the door closed.

28. Plaintiff requested a private meeting because Mr. Wiles routinely gossiped about Plaintiff's coworkers.

29. For instance, Mr. Wiles had previously revealed that one of Plaintiff's coworkers had a substance use disorder. Mr. Wiles gossiped about this other coworker to Plaintiff, and one other coworker, in the kitchen area during working hours. Plaintiff hoped that the closed-door meeting would help ensure that Mr. Wiles did not disclose their conversation with other employees and managers.

30. Plaintiff told Mr. Wiles that she had received an unexpected medical diagnosis and wanted to take a six-week leave of absence.

31. Mr. Wiles refused to accept Plaintiff's generalized health condition and forced Plaintiff to reveal her HIV status.

32. Feeling pressured by Mr. Wiles, Plaintiff revealed to him that she had been diagnosed with HIV.

33. Mr. Wiles assumed a shocked and disgusted expression. In response, Plaintiff burst into tears.

34. Plaintiff explained that the leave would allow her to start medication that would lead to the virus becoming undetectable.

35. Additionally, Plaintiff explained that her doctor had cautioned her about the medication's severe side effects. Because of this, she requested a six-week leave of absence to

allow herself time to adjust to the medication as well as give herself time to adjust mentally and emotionally to the diagnosis.

36. Plaintiff told Mr. Wiles that she was scheduled for follow-up testing by the health department on Monday, April 5, 2021. This additional testing was to ensure that there were no false positives or transmission of HIV to her children.

37. Plaintiff told Mr. Wiles she would make a final decision on whether to take the leave once the testing was complete and she had the final results.

38. Mr. Wiles stated he would submit her leave request and told Plaintiff to go home for the day.

39. Plaintiff specifically requested Mr. Wiles to keep this information private and not share it with anyone.

40. On or about Monday, April 5, 2021, the health department's testing confirmed Plaintiff's diagnosis, and Plaintiff immediately contacted Mr. Wiles. Plaintiff told Mr. Wiles she would take the six weeks of leave.

41. During this conversation, Mr. Wiles informed Plaintiff that he had disclosed her HIV diagnosis to Edwin Rodriquez, the General Manager. This news upset Plaintiff as she had requested that her diagnosis not be disclosed to anyone else.

42. Plaintiff specifically asked Mr. Wiles if taking the leave would negatively impact her job. Plaintiff stated that she would not take the leave if it meant she would lose her job.

43. Mr. Wiles assured Plaintiff that the leave was approved, and she would not lose her job. Additionally, Mr. Wiles again reassured Plaintiff that he would submit her leave paperwork.

44. Plaintiff asked Mr. Wiles how she would receive notice that she was back on the schedule. Mr. Wiles stated that "Corporate typically will send an email or will call."

45. Reassured by this conversation, Plaintiff took a six-week leave of absence.

46. Plaintiff's leave of absence began on or about April 5, 2021. Plaintiff expected to return to work on or about May 17, 2021, six weeks later.

47. On or about April 27, 2021, Plaintiff requested a document from Mr. Wiles stating that she was on a leave of absence and noting the last date she had worked. On or about April 30, 2021, Mr. Wiles gave Plaintiff the document she requested.

48. Additionally, Plaintiff informed Mr. Wiles that she was scheduled for a tubal ligation on May 25, 2021.

49. Due to her HIV diagnosis, Plaintiff had made the difficult decision to have a tubal ligation to ensure that she would not transmit HIV via a future pregnancy. This surgery required two weeks to recover. Mr. Wiles stated that this "shouldn't be a problem."

50. Throughout mid-May, June, and July, Plaintiff continually and repeatedly reached out to Mr. Wiles and then to Mr. Rodriquez about coming back to work.

51. On or about May 17, 2021, Plaintiff realized she could no longer access Hotsheets. Hotsheets is Defendants' online system that employees use to review schedules and access their paystubs.

52. Fearing for her job, Plaintiff contacted Mr. Wiles and stated that she wanted to return to work, prior to her tubal ligation surgery. Additionally, Plaintiff told Mr. Wiles that she could no longer access Hotsheets.

53. Mr. Wiles indicated that Plaintiff would have to reapply for her job. In response to her question about returning to work, Mr. Wiles stated that the "plan is in your hands." During that same conversation, Mr. Wiles admitted that he had never filed her leave paperwork.

54. Plaintiff filled out a new application, and Mr. Wiles stated that her job was still available. However, Plaintiff was never put back on the schedule.

55. During this time period, there were "Now Hiring" signs posted in the Chili's Grill & Bar, Barboursville location.

56. Eventually, Plaintiff reached out to the corporate office ("Brinker International").

57. When Plaintiff spoke with the Brinker International corporate representative, she explained that she had been given a six-week leave of absence and that she was trying to be put back on the schedule. Plaintiff further explained that she had not voluntarily quit her job.

58. The phone number for the corporate representative had a 972 area code, the area code for Dallas, Texas.

59. The corporate representative stated that there had been a "miscommunication." Brinker International then told Plaintiff to reach out to Mr. Wiles again to see about being put back on the schedule.

60. Plaintiff contacted Mr. Wiles again. Mr. Wiles stated he was leaving on vacation and that he would look at the schedule when he returned.

61. When Mr. Wiles returned from vacation, he told Plaintiff to contact Edwin Rodriguez, the General Manager, about getting put back on the schedule.

62. Plaintiff contacted Mr. Rodriguez, but he failed to respond.

63. Continuing to fight for her job, Plaintiff called Brinker International again. The corporate representative stated that they would reach out to Mr. Rodriquez within two days.

64. On July 9, 2021, Mr. Rodriquez contacted Plaintiff and asked her to meet with him on Tuesday, July 13, 2021.

65. On July 13, 2021, Plaintiff met with Mr. Rodriguez in the manager's office of Chili's. Plaintiff believed she was going to be put back on the schedule.

66. During that meeting, Mr. Rodriquez told Plaintiff she was not a good fit and stated that although her work was really good, her "attitude is terrible."

67. Plaintiff asked why she had been promoted and given a raise if she had a bad attitude. Mr. Rodriguez did not respond.

68. Plaintiff then asked why there was a delay in responding to her inquiries about returning to work. Mr. Rodriguez stated that he had been "hoping she would go away."

69. Then Mr. Rodriguez stated that Plaintiff could use him as a job reference.

70. Plaintiff offered to show Mr. Rodriguez the messages she and Mr. Wiles exchanged about Plaintiff's approved leave and return to work. Mr. Rodriquez refused to review the messages.

71. Plaintiff has suffered sleeplessness and extreme worry about her finances. She has been depressed and gained weight since her unlawful termination by Defendants.

72. Defendants Chili's of West Virginia, Inc., d/b/a Chili's Grill & Bar, at the Barboursville, WV location, and Brinker International, are joint employers because they share common directors, officers, and employees. Additionally, they share supervisory authority to direct and control Plaintiff's daily work schedule, they share control of hiring decisions, disciplinary decisions, and ultimately shared in the decision to unlawfully terminate Plaintiff.

73. Defendants' acts were unlawful, reckless, willful, and carried out with actual malice.

74. Plaintiff files this action to seek redress for her unlawful termination and to receive compensation, including back pay, front pay, emotional distress damages, punitive damages,

reasonable attorney fees and costs, and equitable and injunctive relief for the harms she has suffered.

## LEGAL CLAIMS
## COUNT ONE
### Americans with Disabilities Act ("ADA")

75. Plaintiff incorporates the preceding paragraphs by reference.

76. Plaintiff is an "employee" of the Defendants within the meaning of the ADA. 42 U.S.C. § 12111(4).

77. Defendants are an "employer" of Plaintiff within the meaning of the ADA. 42 U.S.C. § 12111(5).

78. At all relevant times, Plaintiff's disability substantially limited one or more of her major life activities, including but not limited to the operation of a major bodily function, i.e. the function of her immune system. 42 U.S.C. § 12102.

79. Accordingly, at all relevant times, Plaintiff was a person with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2), and was, therefore, entitled to protection under the Act from discrimination on the basis of her disability.

80. At all relevant times herein, Defendants knew of Plaintiff's disability, i.e. her HIV positive status.

81. At the time that she was fired, Plaintiff was a qualified individual within the meaning of the ADA, 42 U.S.C. § 12111(8), and was capable of performing the essential functions of her position as a Prep Cook One with or without a reasonable accommodation.

82. Defendants' termination of Plaintiff's employment was motivated, in whole or in substantial part, by Plaintiff's disability in violation of the ADA. *See* 42 U.S.C. § 12112.

83. As a direct and proximate result of the Defendants' unlawful, discriminatory

termination of Plaintiff's employment, Plaintiff lost and will continue to lose wages and/or benefits in an amount to be proven at trial.

84. As a direct and proximate result of the Defendants' unlawful, discriminatory termination of Plaintiff's employment, Plaintiff has suffered indignity, embarrassment, humiliation, and emotional distress entitling her to damages in an amount to be determined by the jury.

85. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") contending that her termination violated the West Virginia Human Rights Act and ADA. The Charge was docketed on January 28, 2022.

86. On August 30, 2022, the EEOC issued a Notice of Right to Sue as more than 180 days had passed since the filing of the charge and, thus, this civil action is timely filed under the ADA. A copy of the Notice of Right to Sue is attached hereto at Exhibit A.

## COUNT TWO
## West Virginia Human Rights Act ("WVHRA")

87. Plaintiff incorporates the preceding paragraphs by reference.

88. Under the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1, et seq., and the attendant regulations, W. Va. C.S.R. §77-1-1, et seq., no employer shall discriminate in employment against an employee who is a qualified individual with a disability.

89. Plaintiff is an "employee" of Defendants within the meaning of the WVHRA. W. Va. Code § 5-11-3.

90. Defendants are an "employer" within the meaning of the WVHRA. W. Va. Code § 5 11-3(d).

91. At all relevant times herein, Plaintiff was a "qualified individual with a disability" within the meaning of the WVHRA, W. Va. Code § 5-11-3(m), and was, therefore, entitled to

protection from discrimination under the Act on the basis of her disability.

92. Plaintiff's HIV status substantially limits the functions of her immune system and substantially limits her major life activities. W. Va. Code § 5-11-3(1).

93. At all relevant times herein, Defendants knew Plaintiff had been diagnosed with HIV and regarded her as having an impairment that substantially limited one or more of her major life activities, as defined at W. Va. Code § 5-11-3(m).

94. At the time that she was fired, Plaintiff was capable of performing the essential functions of her position as a Prep Cook One with or without a reasonable accommodation.

95. Defendants' termination of Plaintiff's employment was motivated, in whole or in substantial part, by Plaintiff's disability in violation of the WVHRA. *See* W. Va. Code § 5-11-9 and the State Rules promulgated thereunder.

96. As a direct and proximate result of Defendants' unlawful, discriminatory termination of Plaintiff's employment, Plaintiff has lost and will continue to lose wages and/or benefits in an amount to be proven at trial.

97. As a direct and proximate result of Defendant's unlawful, discriminatory termination of Plaintiff's employment, Plaintiff has suffered indignity, embarrassment, humiliation, and emotional distress entitling her to damages in an amount to be determined by the jury.

98. In violating these established legal protections, Defendants acted with malice or reckless indifference to Plaintiff's rights, and acted willfully, knowingly, intentionally, oppressively, and/or wantonly to their civil obligations and Plaintiff's statutorily protected rights, thereby justifying an award of punitive damages.

## COUNT THREE
### Intentional Infliction of Emotional Distress ("IIED")

99. Plaintiff incorporates the preceding paragraphs by reference.

100. Defendants' intentional, reckless, and deliberate conduct as pleaded above was and is conduct which is atrocious, intolerable, and exceeding of the bounds of decency.

101. Defendants knew or should have known their conduct was substantially certain to cause emotional distress to Plaintiff.

102. Defendants' conduct caused Plaintiff to suffer severe emotional distress, including fear, anguish, embarrassment, humiliation, physical injury, worry, anxiety, mental and emotional distress, lost sleep, stomach upset, and depression.

103. Plaintiff is therefore entitled to recover from Defendants her actual and compensatory damages, as well as punitive damages, reasonable attorney fees, and the costs of this litigation.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Jane Doe, requests the following relief:

(a) Equitable and injunctive relief;

(b) Damages as set forth above, including but not limited to back pay, front pay, emotional distress, and punitive damages;

(c) Exemplary damages in an amount to be determined by the jury;

(d) Reasonable attorney fees and costs; and

(e) Such other relief as may be just and equitable.

**JANE DOE**
Plaintiff, By counsel,

*s/Laura Davidson*
Laura Davidson (WVSB #13832)
Lydia Milnes (WVSB #10598)
Mountain State Justice, Inc.
1029 University Ave., Ste. 101
Morgantown, WV  26505
(304)326-0188 (phone)
(304)326-0189 (fax)
laura@msjlaw.org

14